## KELLY SALVAGE CO. v. NEEL.   (No. 7169.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1924.)

Trial ⟠29(4)—Questions to witnesses by court and erroneously fining member of defendant firm for contempt held reversible error.

    In action for breach of contract for plaintiff to construct concrete flooring, where evidence as to existence of such contract was conflicting, questions by judge to witnesses, indicating his desire to prove improbability that plaintiff would have made admitted contract to build foundation, unless he also had contract to build floors, and fining of member of defendant firm for contempt, of which it was ascertained he was not guilty, *held* reversible error.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by J. E. Neel against the Kelly Salvage Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

F. M. Bransford, of Fort Worth, for appellant.

James & Conner, of Fort Worth, for appellee.

FLY, C. J. This action was instituted by appellee against appellant to recover profits in the sum of $800, which he would have realized if appellant had not breached a contract for appellee to construct 24,000 square feet of concrete flooring at a cost of 14 cents a square foot, on which he would have realized a profit of 3 cents per square foot. It was alleged that in connection with the floor, and as a part of the agreement as to the floor, a contract was entered into between the parties, appellant acting through its agent, C. E. Bunch, that appellee should construct approximately 26 cubic yards of concrete foundation footing at $1.50 per cubic yard; that the foundation footing was constructed by appellee, but appellant would not permit him to construct the flooring. Appellant admitted the contract as to the 26 cubic yards of foundation footing, but denied that it ever made a contract with appellee for the flooring. The cause was submitted to a jury on special issues, and on their answers thereto judgment was rendered in favor of appellee for $755.40.

The jury found that C. E. Bunch, as superintendent of the Kelly Salvage Company, had the authority to enter into the contract alleged by appellee to have been made between him and appellant for the construction of the flooring; that appellant through its superintendent, C. E. Bunch, employed appellee to construct the concrete flooring at the price of fourteen cents per square foot; that, if appellee had been permitted by appellant to construct the floor, he would have realized a profit of 3 cents a square foot.

The only issues in the case were as to the power and authority of Bunch, superintendent of appellant, to enter into the contract, and did he exercise his authority and make a contract for the construction of the floor with appellee, and upon a breach of said contract what damages accrued to appellee? It was admitted that the contract for the foundation footings was made, and that Bunch made it, and appellee complied with the contract, and was offered pay for it by appellant. The contest was over the contract for the flooring; the work of constructing the footing being a minor part of the job. There was a direct and pointed conflict between the evidence offered by appellee and that offered by appellant as to whether any contract was ever made for the construction of the flooring. With this conflict in the evidence every circumstance becomes of importance in casting the scales in favor of one party or the other. With the case in this condition, and while appellee was being cross-examined as to what the plans and specifications called for, the court signified

his desire to ask a question, prefacing it with the statement:

"I want to get something straightened out in my mind; as I go along I try to keep the evidence in my mind as well as the jury."

This was done, not by one question, but by numerous questions, as to the cost of 24 yards of foundation at $1.50 a yard, as to the tools of appellee being in another place in a broom factory, as to carrying them to the place where the foundation was to be built, as to the number of men it would require to put in the foundation—"the $36 worth of foundation"—as to carrying a mixer, and that only one day would be required to finish the foundation. These matters and others were reiterated by the court, clearly showing the jury that the court was desirous of proving the utter improbability that appellee would have made a contract for the building of the $36 foundation, unless he also had the contract to build the floors. Counsel for appellee undoubtedly had the right to have brought out those points in favor of his client, but the court had no right or authority to enact the part of an advocate in the case, under the guise of "getting something straightened out" in his mind. In the straightening out process the court dealt such deadly blows to the appellant that its defense was destroyed before the jury. In order to show the class of questions propounded by the court, we copy as follows:

"The Court. I want to ask him, in order to put or do that $36 worth of foundation work you had to take how many men along with you? A. About seven.

"Q. From the south side? A. Yes, sir.

"Q. How many miles? A. About three and a half or four miles.

"Q. To do what work? What would have been your profit in leaving the job on south Main street and taking those men and the other material—what would have been your profit on the $36 worth of work? A. It would have been very small.

"Q. Would it have been 2 cents or $200, or what? A. It would have been about $10 or $12; I rather think."

To close this remarkable episode the court remarked: "That is what I want to get at."

The extraordinary conduct hereinbefore shown was not all, but the district judge again took charge of appellee, and through a number of questions ascertained that appellee did not carry the mixer out in his hands or on a horse, but hired a truck to convey it; that it weighed about 5,800 pounds, that it was seven feet high, six or seven feet wide, when the hopper is down, and eight or nine feet wide when the hopper is up; that the mixer was not necessary to the foundation work, and then the court proceeded:

"I want to ask a question along that line—I want to keep up with this testimony—why it was necessary to take that big mixer out there, 5,800 pound mixer to put in 24 yards of foundation?"

The reply to that question was:

"It would have been necessary to have five or six wheelbarrows, and three or four negroes for the foundation and a few pours, and that is all."

As a climax to the remarkable scene in which the court was the chief actor it seems that the court fined F. L. Kelly, one of the partners in the firm of Kelly Salvage Company, $25 for a contempt of the court, of which it was ascertained he was not guilty and the fine remitted.

Under those circumstances we cannot conceive that appellant had a fair trial, before an impartial judge, and an unprejudiced jury, and for this reason the judgment will not be permitted to stand.

The judgment is reversed, and the cause remanded.